UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN SEAN JACKSON,

    Plaintiff,

v.        Case No. 3:16cv644-MCR-CJK

J. COPPENGER, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is before the court on defendants Coppenger and Shaw's motion for summary judgment. (Doc. 49). Plaintiff did not file a response. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the motion, the record, and the relevant law, the undersigned recommends that the motion be denied because material factual disputes exist concerning the defendants' use of force and the severity of plaintiff's injuries.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, commenced this action on December 1, 2016, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). At the time he filed the complaint, he was an inmate of the Florida Department of Corrections ("FDOC") confined at Century Correctional Institution

("Century CI"). In June 2017, however, he was released from FDOC custody. (Doc. 38).

The complaint named 3 employees of Century CI as defendants: (1) Sergeant J. Coppenger; (2) Sergeant Shaw; and (3) Captain Moore. Plaintiff has voluntarily dismissed Captain Moore from the case. (Docs. 22, 25, 37). The complaint alleges Coppenger and Shaw violated the Eighth Amendment by using excessive force. As relief, plaintiff seeks compensatory and punitive damages.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole

could lead a rational fact finder to find for the nonmoving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## FACTS

The facts pertinent to the resolution of the motion are drawn from plaintiff's verified complaint[1] (doc. 1) and the evidence attached to defendants' summary judgment motion (docs. 49-1 – 49-6). *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and . . . a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Plaintiff's Version of Events

The complaint sets forth some pertinent factual matters from plaintiff's perspective. (Doc. 1). On September 11, 2016, defendant Coppenger approached plaintiff outside of the chow hall and instructed him to get in line. Coppenger then

---

[1] Because plaintiff signed the complaint under penalty of perjury, pursuant to 28 U.S.C. § 1746 it is the functional equivalent of an affidavit.

told plaintiff to step out of line and "go stand [his] stupid ass on stupid island," which referred to a drain outside the chow hall exit. After plaintiff complied, Coppenger counseled plaintiff "using abusive speech before telling [him] to return to [his] housing unit."

As plaintiff passed through the center gate, Officer Moore asked him why he "had been held back." Plaintiff told Moore, defendant Shaw, and other correctional officers that he "wasn't appreciative of the fact that . . . an inmate in their charge could be completely respectful when articulating [himself] even though an officer could be disrespectful and they wouldn't suffer any negative recourse for it." Coppenger then approached and clarified "exactly which profane words he had called [plaintiff.]" Coppenger and Shaw laughed; Coppenger then told plaintiff "'and you can't do shit about it but walk that way,' indicating the housing units with his right index finger." Plaintiff replied, "you're right sir, because I go home next year and today is my birthday."

Next, Shaw placed plaintiff in wrist restraints, and Shaw and Coppenger escorted plaintiff toward the confinement unit. On the way, Shaw called plaintiff a "stupid fuck" and "squeezed shut the left wrist restraint on [plaintiff's] left wrist beyond the threshold necessary to safely secure [his] hands, causing injury to [him] in the form of lacerations, bruises and nerve damage in [his] left hand." When plaintiff "began to stumble in pain," Shaw and Coppenger "slammed [plaintiff] to

the ground." Shaw landed on plaintiff's wrist, "causing the wrist restraint to close tighter." Plaintiff subsequently received a post-use-of-force examination.

Defendant's Version of Events

On September 11, 2016, correctional officers learned of a possible statewide protest by inmates; Century CI increased the number of officers on duty in preparation for this possible event. At approximately 6:15 a.m., Coppenger was watching inmates exit the dining facility. He witnessed plaintiff being loud and disruptive, and not standing in line with the other inmates. Coppenger ordered plaintiff to get in line but plaintiff refused. Coppenger again ordered plaintiff to get in line; plaintiff replied, "they just trying to stir up some shit." Coppenger asked plaintiff to step aside, counseled him about his behavior, and delayed him until the other inmates had left the area. Coppenger instructed plaintiff to return to his dormitory. Coppenger later wrote plaintiff a disciplinary report for disrespect based on their interactions outside the dining facility. Plaintiff was found guilty of the charge and sentenced to 15 days of disciplinary confinement.

Shaw observed plaintiff approaching the center gate being loud and belligerent. Shaw advised plaintiff to cease his behavior. Plaintiff complied temporarily, but leaving the area, he again became loud and belligerent, attempting to incite a disturbance.

Case No. 3:16cv644-MCR-CJK

Shaw placed plaintiff in wrist restraints and double locked the restraints so they could not be loosened or tightened from their initial position. Due to the disruptive behavior, Shaw began escorting plaintiff to the medical department for a pre-confinement examination. During the escort, plaintiff tried to brace himself and push against Shaw to escape the custodial hold. Shaw used body-weight force to bring plaintiff to the ground. Plaintiff continued to yell and act belligerent during the incident. After plaintiff became compliant, different correctional officers escorted plaintiff to medical for evaluation. A physical examination revealed two minor abrasions to the left elbow, and slight redness to the left wrist.

## DISCUSSION

Eighth Amendment

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force was applied maliciously and sadistically to cause harm, the court considers: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to

temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (*citing Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)).

Here, the parties present conflicting versions of the events surrounding the escort of plaintiff from the center gate. Plaintiff says defendants, without justification, overtightened his left handcuff, then slammed him to the ground and further tightened the handcuff on his left wrist. Defendants claim plaintiff's version is refuted by the record—including declarations from Coppenger and Shaw. Defendants say: (1) Coppenger did not see plaintiff after he left the vicinity of the chow hall; (2) Shaw double locked plaintiff's handcuffs so they could not be loosened or tightened from their initial position; (3) plaintiff attempted to escape Shaw's custodial hold; and (4) Shaw used an appropriate amount of force to bring plaintiff to the ground and into compliance. (Docs. 49-2, 49-4). The court, however, must view the facts in the light most favorable to plaintiff for purposes of summary judgment. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) ("[T]he district court must not resolve factual disputes by weighing conflicting evidence, since it is the province of the jury to assess the probative value of the evidence.") (citations omitted); *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in

determining whether there is a genuine dispute of fact on a material issue in the case.").

Taking plaintiff's version of events as true, the finder of fact could believe correctional officers intentionally squeezed plaintiff's left handcuff tighter to cause pain, then slammed him to the ground and further tightened the cuff. Such facts would be sufficient to establish liability under the Eighth Amendment. Because plaintiff's complaint establishes a genuine dispute of material fact regarding whether defendants' use of force was excessive, summary judgment on plaintiff's Eight Amendment claim is not appropriate.

Defendants also assert they are entitled to qualified immunity. (Doc. 49, p. 15-18). "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Nevertheless, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). A reasonable prison official would understand that intentionally tightening an inmate's handcuffs

to cause pain or injury, and then slamming that inmate to the ground, would violate the Constitution. Defendants, therefore, are not entitled to qualified immunity.

42 U.S.C. § 1997e

Next, defendants claim plaintiff cannot recover compensatory or punitive damages under the Prison Litigation Reform Act ("PLRA") because he suffered only *de minimis* injuries. The PLRA provides "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "Under the statute and [Eleventh Circuit] caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015); *see also Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011) (PLRA precludes the recovery of punitive damages in the absence of physical injury); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated"). "A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching

back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks." *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

Here, plaintiff states he suffered lacerations, bruises, and nerve damage to his left wrist and hand. (Doc. 1, p. 6). The medical records defendants submitted show plaintiff complained of, and was treated for, wrist pain for over six months after the September 2016 altercation.[2] (Doc. 49-5). Medical personnel ordered x-rays, prescribed ibuprofen and naproxen, and assessed "probable nerve damage." (*Id.*, p. 2, 4, 8-9). The medical records, therefore, indicate medical personnel determined plaintiff had an injury significant enough to mandate ongoing treatment.

Defendants also submitted a declaration from Dr. Albert Maier, a senior physician with the FDOC. (Doc. 49-6). Dr. Maier reviewed plaintiff's medical records but did not examine him. The doctor asserts testing never confirmed plaintiff experienced peripheral nerve damage. Dr. Maier, however, concedes: (1) "it is possible that the Plaintiff suffers from handcuff neuropathy"; (2) "[i]mproperly applied handcuffs can cause such a condition"; and (3) "such a condition typically resolves itself within ten to twenty months and does not lead to permanent damage." The medical evidence, therefore, is sufficient to allow a reasonable jury to conclude plaintiff suffered more than *de minimis* injuries.

---

[2] For example, on April 14, 2017, plaintiff reported "sharp pain shoots up [his] thumb," his "fingers [were] still numb," and "ibuprofen [provided] only minimal pain relief." (Doc. 49-5, p. 2).

Case No. 3:16cv644-MCR-CJK

Accordingly, it is respectfully RECOMMENDED:

1. That defendants' motion for summary judgment (doc. 49) be DENIED.

2. That this matter be referred to the undersigned for further pretrial proceedings on plaintiff's individual capacity Eighth Amendment claim against defendants Coppenger and Shaw.

At Pensacola, Florida, this 31st day of August, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.